By the Court.—Sedgwick, J.
The agreement of the parties states, specifically, their obligations and their interests in the capital and profits.
The plaintiffs were bound to contribute $14,000.in cash to the capital. The defendant was bound to put in “all the assets of the firm of Dunn & Anderson represented on the books of said firm, as bills due, ór to become due, except the sum of $1,500.” Assuming that the defendant was not bound to make the real value of these assets equal to their nominal value, the agreement, after providing that profits and losses were to be shared and borne equally, has the reasonable and equitable provision that at the “end, or other sooner termination-of their copartnership,” the copartners will make a final account, and all and every the stock, and stocks, as well as the gains and increase thereof, which shall appear to be remaining, either in money, &c., debts or otherwise, shall be divided between. them, to each his proper and respective proportion, reference *506 being had to the capital stock put in and invested by the respective parties.”
It is seen, at once, that Anderson, not having invested as much as the Schultes, inasmuch as his contribution proved to be of the value of only $3,876.65, while they had contributed $11,848.90, it was their right and interest to have the accounting include, as assets, all that had been drawn out for the personal use of the partners above what they were entitled to draw out. What was properly drawn out was to be equally shared by the parties, while, if what was improperly drawn out was returned, as it should be, to the firm, the plaintiffs would be interested in it, to a far greater extent than the defendant.
The referee proceeded upon the position that the respective proportions of interest in the assets at dissolution, were represented by $11,848.20, the cash put in by plaintiff, and $3,876.75, the cash value of the assets put in by the defendants. I think this was erroneous in making the proportion of the plaintiff too small. For, the assets were increased by charging the plaintiffs with the amount of their capital which they liad failed to contribute as they agreed. That is, the assets were supposed to include this amount, viz. : $2,151.80. It was in effect proposed to consider it as cash. If the plaintiffs had to bear this burden, they could not be deprived of the advantage of its being part of capital contributed by them. And then, the proportion would be as $14,000 is to $3,876.75.
Again, I think there was a mistake in the mode of ascertaining the assets.
In the course of the business, as is stated above, the plaintiffs and defendant had drawn from the firm more money than was allowed by the partnership articles.
The plaintiffs had drawn, . . . $3,036.75
The defendants had drawn, . . 2,625.28
The referee finds that it was the right of the defend *507 ants to draw from the estimated assets, $203.05, to .equalize the amount drawn by him and the amount drawn by plaintiffs, and afterwards, at the end of the accounting, the plaintiffs were held liable to pay the whole of this $203.05. I think there were two errors. 1st. The defendant was not entitled to draw from the assets this sum, because he was entitled to have only the proportion; this has been already stated. 2d. There is no provision of the articles that permit him to draw any amount for the purpose of equalizing his drafts with plaintiffs. Each was entitled to draw but $50 a week for the forty-four weeks they were in business—that is, $2,200. All above that sum should have remained undrawn, and the plaintiffs should return to the assets,.....$836.75 And the defendant also, .... 425.28 The assets should, in view of the referee, be increased by the amount of the capital which plain tiffs should, but had not contributed, viz.,......2,151.80 The plaintiffs had in their possession money collected by them,..... 537.99 The defendants,....._ 208.44 Cash in receiver’s hands, .... 81.07
The sum total should be divided according to the proportions in which each was entitled to share in the assets, and that result would show what each had the right to have. If one had received an amount of the assets actually, which, with any sum they had not paid to the firm, but should have, would exceed the amount they wrere entitled to, out of the assets, the excess should be paid to the other party, and this excess would be the correct amount of the judgment.
So far, no attention has been paid to the effect upon the result of a correct application of the provisions of the articles, that provided that the loss should be borne equally. As soon as a loss occurred, the only way *508 that each could actually bear it equally, would be to pay one half of its amount back into the firm, or, in case it was not paid, to be charged with the one-half, in his individual account, and then, at a later time, to perform the obligation expressed by such a charge. This not having been done before the close of business and the final accounting, these charges in gross, viz., the whole of the losses, should be treated as the plaintiffs’ deficiency of capital was treated, and should increase what was called the assets of the firm, exactly the same as if third persons had promised to bear the losses, and the assets so increased should be divided in the proportions above specified, and each party should then be considered as having already received on account of his share the amount he had omitted to pay over, under his obligation to share equally the losses, i. e., one-half ol the losses.
The result of this would be so different from the result of the accounting below, that there should be a new trial and a new accounting, with costs to the plaintiff to abide the event of the accounting.
Judgment reversed.
Speir and Freedman, JJ., concurred.